SMITHKLINE BEECHAM CORPORA-
TION and Beecham Group, P.L.C.

v.

GENEVA PHARMACEUTICALS, INC.

SmithKline Beecham Corporation

v.

Apotex Corporation, Apotex,
Inc. and Torpharm, Inc.

SmithKline Beecham Corporation
and Beecham Group, P.L.C.

v.

Zenith Goldline Pharmaceuticals, Inc.

SmithKline Beecham Corporation

v.

Apotex Corporation, Apotex,
Inc. and Torpharm, Inc.

SmithKline Beecham Corporation and
Smithkline Beecham, P.L.C.

v.

Geneva Pharmaceuticals, Inc.

SmithKline Beecham Corporation and
SmithKline Beecham, P.L.C.

v.

Zenith Goldline Pharmaceuticals, Inc.

SmithKline Beecham Corporation and
SmithKline Beecham, P.L.C.

v.

Apotex Corporation, Apotex,
Inc. and Torpharm, Inc.

SmithKline Beecham Corporation
and Beecham Group, P.L.C.

v.

Alphapharm Pty, Ltd.

SmithKline Beecham, P.L.C.

v.

Apotex Corporation, Apotex,
Inc. and Torpharm, Inc.

SmithKline Beecham, P.L.C.

v.

Zenith Goldline Pharmaceuticals, and
Sumika Fine Chemicals Co., Ltd.

SmithKline Beecham Corporation
and Beecham Group, P.L.C.

v.

Andrx Pharmaceuticals, Inc., Andrx
Pharmaceuticals, L.L.C. and
Basf Corporation

SmithKline Beecham Corporation and
SmithKline Beecham, P.L.C.

v.

Alphapharm Pty, Ltd.

SmithKline Beecham, P.L.C.

v.

Geneva Pharmaceuticals, Inc. and
Sumika Fine Chemicals Co.,
Ltd.

Nos. 99–CV–02926, 99–CV–4303, 00–CV–
1393, 00–CV–4888, 00–CV–5953, 00–CV–
6464, 01–CV–159, 01–CV–10278, 01–CV–
2169, 01–CV–2602, 01–CV–2981, 01–CV–
3364, 01–CV–1484.

United States District Court,
E.D. Pennsylvania.

Sept. 30, 2002.

Arthur Makadon, Jamie B. Bischoff, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, Sally A. Steffen, Ballard, Spahr, Andrews & Ingersoll LLP, Philadelphia, PA, Ford F. Farabow, Jr., Walter Y. Boyd, Jr., Finnegan, Henderson, Farabow, Garrett & Dunner, Atlanta, GA, Kenneth M. Frankel, Richard B. Racine, Robert D. Bajefsky, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for Plaintiffs.

Alan K. Cotler, Peggy B. Greenfeld, Reed Smith LLP, Philadelphia, PA, Patricia E. Campbell, Klett, Lieber, Rooney & Schorling, Philadelphia, PA, Peter F. Marvin, Marvin, Larsson, Hankin & Scheuritzel, Philadelphia, PA, Arlene Fickler, Hoyle, Fickler, Herschel & Mathes LLP, Wendi S. Meltzer, Hoyle, Morris & Kerr, Philadelphia, PA, John B. Starr, Jr., John C. Vetter, Lynne Darcy, Melissa L. Paddock, Steven J. Lee, Kenyon & Kenyon, New York, NY, Richard D. Kelly, William T. Enos, Oblon, Spivak, McClelland, Maier and Neustadt, P.C., Alexandria, VA, for Defendants.

## MEMORANDUM AND ORDER

SURRICK, District Judge.

Presently before the Court are the Motions of Plaintiffs SmithKline Beecham Corp., Beecham Group, P.L.C. and SmithKline Beecham, P.L.C. (collectively, "SmithKline") for Leave to Amend the Complaint and Join a Party Defendant in Civil Action Nos. 99–CV–2926 (Doc. No. 26), 00–CV–1393 (Doc. No. 34), 00–CV–5953 (Doc. No. 11) and 00–CV–6464 (Doc. No. 34 in 00–CV–1393). For the reasons that follow, Plaintiffs' Motions will be granted.

### I. Factual and Procedural Background [1]

SmithKline is the owner of a series of patents relating to its drug Paxil®, an anti-depressant that is among the most widely prescribed prescription drugs in the United States. Defendants Geneva Pharmaceuticals, Inc. ("Geneva") and Zenith Goldline Pharmaceuticals, Inc. ("Zenith") are generic drug manufacturers who have submitted Abbreviated New Drug Applications ("ANDA") to the federal Food and Drug Administration ("FDA") seeking approval to produce and market generic forms of Paxil®.[2]

Pursuant to the statutory framework of the 1984 Drug Price Competition and Patent Term Restoration Act (referred to herein as the "Hatch–Waxman Act" or the "Act"), Geneva's and Zenith's ANDAs were accompanied by "Paragraph IV" certifications that the applicable patents related to Paxil® are "invalid or will not be infringed by the manufacture, use or sale of the new drug for which the [ANDA] is submitted ...."[3] *See* 21 U.S.C.

---

1. Additional background regarding these cases and the applicable statutory framework is set forth in the Court's September 29, 2001 Order consolidating the above-captioned actions for pretrial purposes.

2. Geneva submitted ANDA No. 75–566, and Zenith subsequently submitted ANDA No. 75–691.

3. The Hatch–Waxman Act provides the process by which a generic pharmaceutical man-

§ 355(j)(2)(A)(vii).

SmithKline filed the instant lawsuits against Geneva and Zenith, alleging that the filing of their respective ANDAs constitutes infringement of several of Smith-Kline's patents related to Paxil®. Specifically, in Civil Action No. 99–CV–2926, SmithKline's initial Complaint alleges that Geneva's submission of its ANDA infringed U.S. Patent No. 4,721,723 (the "'723 Patent"); No. 5,872,132 (the "'132 Patent"); and No. 5,900,423 (the "'423 Patent").[4] SmithKline subsequently filed a second action against Geneva (Civil Action No. 00–CV–5953), alleging infringement of U.S. Patent No. 6,080,759 (the "'759 Patent") and No. 6,113,944 (the "'944 Patent").[5] With respect to Zenith, SmithKline filed Civil Action No. 00–CV–1393, alleging infringement of the '723, '132 and '423 Patents, and Civil Action No. 00–CV–6464, alleging infringement of the '759 and '944 Patents.

In the instant Motions, SmithKline seeks leave to file an Amended Complaint in each case to add Sumika Fine Chemicals

Co., Inc. ("Sumika") as a defendant. SmithKline asserts that the ANDAs submitted by Geneva and Zenith, which SmithKline has received in discovery, identify Sumika as the manufacturer of the paroxetine hydrochloride active ingredient used in the tablets that are the subject of the ANDAs. The following facts supporting the addition of Sumika are taken from SmithKline's proposed Amended Complaints.

Sumika is a corporation organized under the laws of Japan, and maintains offices in Osaka, Japan, as well as Chicago and New York. *See* Complaints, No. 00–CV–1393 at ¶ 9 and No. 00–CV–5953 at ¶ 13. Sumika is in the business of manufacturing and selling chemicals, including bulk pharmaceutical compounds, for distribution throughout the United States, including in this District. *Id.* SmithKline alleges that "Sumika provided paroxetine hydrochloride, information, and technical assistance that formed the basis of [Geneva's and Zenith's] ANDA for commercial marketing of paroxetine hydrochloride as an antide-

---

ufacturer may file an ANDA to obtain expedited approval for a generic drug that is the equivalent of a drug previously approved by the FDA pursuant the New Drug Application process. *See* 21 U.S.C. § 355(j). The ANDA applicant must include, for each of the patents applicable to the previously approved "pioneer drug", a certification:

(I) that such patent information has not been filed [a "Paragraph I" certification], (II) that such patent has expired [a "Paragraph II" certification], (III) of the date on which such patent will expire [a "Paragraph III" certification], or (IV) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted [a "Paragraph IV" certification]; ...

35 U.S.C. § 355(j)(2)(A)(vii). An ANDA applicant submitting a Paragraph IV certification must give detailed notice to the patent holder, who may then file an infringement action against the ANDA applicant within 45

days of receipt of the notice. If the patent holder does not file suit within 45 days, approval of the ANDA is effective immediately. 35 U.S.C. § 355(j)(5)(B)(iii).

4. The "'723 Patent" claims, *inter alia,* "crystalline paroxetine hydrochloride hemihydrate and its use in treating depression;" the '132 Patent claims "a particular form of paroxetine hydrochloride hemihydrate ('Form C');" and the '423 Patent claims "a particular form of paroxetine hydrochloride anhydrate ('Form A')." *See* Complaint, No. 99–CV–2926 at ¶¶ 4, 6–7.

5. The '759 Patent claims, *inter alia,* "paroxetine hydrochloride anhydrate Form A made according to a process set forth in the Patent, and a process for making paroxetine hydrochloride anhydrate Form A." *See* Complaint, No. 00–CV–5953 at ¶ 7. The '944 Patent claims, *inter alia,* "a pharmaceutical composition in tablet form containing paroxetine, produced on a commercial scale by a defined process." *Id.* at ¶ 9.

pressant." *See* Complaints, No. 00–CV–1393 at ¶ 21 and No. 00–CV–5953 at ¶ 30. Upon providing the paroxetine hydrochloride, information and assistance, Sumika was aware of, at least, Smith-Kline's '723, '759 and '944 Patents. *Id.* SmithKline further alleges that in support of the ANDAs, Sumika filed Drug Master File ("DMF") No. 13,888 with the FDA for paroxetine hydrochloride and authorized the FDA to rely on the DMF in support of the ANDAs.[6] *Id.* Geneva and Zenith relied on Sumika's DMF "for a complete description of the paroxetine hydrochloride, including the physical and chemical characteristics and stability of the paroxetine hydrochloride," and if the ANDAs are approved, Sumika will make and sell the paroxetine hydrochloride used as the active ingredient in Geneva's and Zenith's generic product. *Id.*

Based on these allegations, SmithKline seeks to amend its Complaints to add claims against Sumika alleging that it infringed, induced the infringement of and/or contributed to the infringement of the '723, '132, '423, '759 and '944 Patents by submitting, or actively and knowingly aiding, abetting and inducing the submission of Geneva's and Zenith's ANDAs before the expiration of those patents.

SmithKline further asserts that the manufacture, use, import, offer for sale, or sale of paroxetine hydrochloride tablets as an antidepressant upon approval of the ANDAs will directly infringe the claims of SmithKline's patents. *See* Complaints, No. 99–CV–2926 at ¶ 26; No. 00–CV–1393 at ¶ 22; No 00CV–5953 at ¶ 31; and No. 00–CV–6464 at ¶ 31. SmithKline alleges that Sumika's manufacture and sale of the paroxetine hydrochloride for the generic tablets will constitute, at the least, inducement of Geneva's and Zenith's direct infringement. *See* Complaints, No. 00–CV–1393 at ¶ 22; No 00CV–5953 at ¶ 31; and No. 00–CV–6464 at ¶ 31.

Geneva and Zenith have opposed Smith-Kline's Motions for leave to amend, arguing, *inter alia,* that the proposed amendments are futile because Sumika cannot be liable for the "artificial" act of infringement implicated by the submission of an ANDA under the Hatch–Waxman Act.[7]

## II. Legal Standard

Pursuant to Fed.R.Civ.P. 15(a), leave to amend a complaint should be "freely given when justice so requires." In this Circuit, the Court of Appeals has instructed lower courts to apply a very liberal standard in considering whether to

**6.** A DMF is defined, in pertinent part, as:

[A] submission of information to the [FDA] by a person (the drug master file holder) who intends it to be used for one of the following purposes: to permit the holder to incorporate the information by reference when the holder submits an investigational new drug application under Part 312 or submits an application or an abbreviated application or an amendment or supplement to them under this part, or to permit the holder to authorize other persons to rely on the information to support a submission to FDA without the holder having to disclose the information to the other person. FDA ordinarily neither independently reviews drug master files nor approves or disapproves submissions to a drug master

file. Instead, the agency customarily reviews the information only in the context of an application under Part 312 or this part. 21 C.F.R. § 314.420.

**7.** In Civil Action No. 99–CV–2926, Geneva also argues that SmithKline has failed to allege sufficient facts to establish personal jurisdiction over Sumika. As SmithKline responds, and we agree, Geneva lacks standing to contest personal jurisdiction on Sumika's behalf. *See Duttle v. Bandler & Kass,* No. 82 Civ. 5084, 1992 WL 162636 (S.D.N.Y. June 23, 1992). Morever, we note that SmithKline named Sumika as an original defendant in Civil Action No. 01–CV–2602. While Sumika has filed a motion to dismiss the claims against it in that action, it has not raised lack of personal jurisdiction as a defense.

grant leave to amend. *Dole v. Arco Chem. Co.*, 921 F.2d 484 (3d Cir.1990). Nonetheless, a court may deny leave based on certain factors, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■■■ Futility is analyzed under the same standard of legal sufficiency as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997). In other words, leave to amend should not be denied based on futility unless the proposed amended complaint would "fail to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When reviewing a claim of futili-ty, the court assumes the truth of all the complaint's factual allegations. *See Freedom Int'l. Trucks, Inc. of New Jersey v. Eagle Enterprises, Inc.*, 182 F.R.D. 172, 175 (E.D.Pa.1998).

## III. Discussion

### A. *Statutory Framework*

The claims in this litigation and, specifically, the proposed claims against Sumika, require application of certain provisions of the Hatch Waxman Act.[8] In order to expedite the approval of lower-cost generic drugs, the Act authorizes the submission of ANDAs, *see* 21 U.S.C. § 355(j)(2)(A) and note 3, *supra*, and creates an exemption or "safe harbor" for activities that would otherwise constitute patent infringement, to permit generic drug companies to experiment with a patented drug product for the purpose of obtaining regulatory approval for eventual commercial sale of the generic product.[9] That exemption is necessary to apply for regulatory approval. *See Roche Products, Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858, *cert. denied*, 469 U.S. 856, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984). [Footnote omitted] Since that activity could not be commenced by those who planned to compete with the patentee until expiration of the entire patent term, the patentee's *de facto* monopoly would continue for an often substantial period until regulatory approval was obtained. In other words, the combined effect of the patent law and the premarket regulatory approval requirement was to create an effective extension of the patent term.

8. As the Supreme Court explained in *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 669–70,110 S.Ct. 2683, 2688–89, 110 L.Ed.2d 605 (1990):

[The Hatch–Waxman Act] was designed to respond to two unintended distortions of the 17–year patent term produced by the requirement that certain products must receive premarket regulatory approval. First, the holder of a patent relating to such products would as a practical matter not be able to reap any financial rewards during the early years of the term. When an inventor makes a potentially useful discovery, he ordinarily protects it by applying for a patent at once. Thus, if the discovery relates to a product that cannot be marketed without substantial testing and regulatory approval, the "clock" on his patent term will be running even though he is not yet able to derive any profit from the invention.

The second distortion occurred at the other end of the patent term. In 1984, the Court of Appeals for the Federal Circuit decided that the manufacture, use, or sale of a patented invention during the term of the patent constituted an act of infringement, ... even if it was for the sole purpose of conducting tests and developing information

9. Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." As noted, *supra*, the Federal Circuit Court of Appeals held, in *Roche*, that the experimental use of a patented invention during the patent term constituted infringement. *Roche Prods., Inc. v. Bolar Pharm. Co., Inc.*, 733 F.2d 858 (Fed.Cir.1984). Provisions of the Hatch–Waxman Act effectively overruled that deci-

set forth in 35 U.S.C. § 271(e)(1), which states:

It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention (other than a new animal drug or veterinary biological product (as those terms are used in the Federal Food, Drug, and Cosmetic Act and the Act of March 4, 1913) which is primarily manufactured using recombinant DNA, recombinant RNA, hybridoma technology, or other processes involving site specific genetic manipulation techniques) solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.

35 U.S.C. § 271(e)(1).

At the same time, the Hatch–Waxman Act includes provisions to guard against infringement of patents for pioneer drugs. *See Eli Lilly*, 496 U.S. at 676–77, 110 S.Ct. 2683. These provisions include the requirement that ANDA filers make one of four certifications regarding the term, validity and/or infringement of any patents related to the pioneer drug. *See* Note 3, *supra*. In addition, Section 271(e)(2) of the Act provides a remedy to the patent holder by permitting "the commencement of a legal action for patent infringement before the generic drug maker has begun marketing." H.R. Rep. 98–857(I), 1984 U.S.C.C.A.N. 2647, 2660–61. (*See also Eli Lilly*, 496 U.S. at 677–78, 110 S.Ct. 2683) (in order to enable the judicial adjudication upon which the ANDA scheme depends, the Act creates an "artificial" act of infringement consisting of the submission of an ANDA with an erroneous Paragraph IV

certification). Section 271(e)(2) of the Act provides:

It shall be an act of infringement to submit -

(A) an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent, . . .

if the purpose of such submission is to obtain approval under such Act to engage in the commercial manufacture, use, or sale of a drug or veterinary biological product claimed in a patent or the use of which is claimed in a patent before the expiration of such patent.

35 U.S.C. § 271(e)(2)(A).

■ The forms of relief available under the Act are prescribed in Sections 271(e)(3) and (e)(4), which provide as follows:

(3) In any action for patent infringement brought under this section, no injunctive or other relief may be granted which would prohibit the making, using, offering to sell, or selling within the United States or importing into the United States of a patented invention under paragraph (1).

(4) For an act of infringement described in paragraph (2)-

(A) the court shall order the effective date of any approval of the drug or veterinary biological product involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed,

(B) injunctive relief may be granted against an infringer to prevent the commercial manufacture, use, offer to sell,

sion. *See* H.R. Rep. 98–857(I), 1984 U.S.C.C.A.N. 2647, 2678–79 (referencing *Roche* and expressing Congress' intent to permit experimental use of a patented drug prod-

uct and prevent the *de facto* patent extension that results when a generic drug maker cannot begin experimental use until the expiration of patents for the product).

or sale within the United States or importation into the United States of an approved drug or veterinary biological product, and

(C) damages or other monetary relief may be awarded against an infringer only if there has been commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug or veterinary biological product.

The remedies prescribed by subparagraphs (A), (B), and (C) are the only remedies which may be granted by a court for an act of infringement described in paragraph (2), except that a court may award attorney fees under section 285.

35 U.S.C. § 271(e)(3) and (4). In other words, in Section 271(e)(3), the Act precludes a remedy for the otherwise infringing activity expressly permitted by Section 271(e)(1). However, "[i]f a manufacturer goes beyond mere preparation, the remedies under Section 271(e)(4) are available." *Upjohn Co. v. Mova Pharm. Corp.*, 899 F.Supp. 46, 49 (D.P.R.1995) (permitting drug manufacturer to seek injunctive relief under the Act because, even though manufacturer did not allege that the competitor was currently engaging in the commercial manufacture, use or sale of the infringing product, manufacturer's fear that competitor would do so was implicit in lawsuit.).

### B. *Analysis*

In its proposed Amended Complaints, SmithKline seeks to bring claims against Sumika for direct infringement under Section 271(e)(1) and inducement of infringement under Section 271(b).[10] We address these claims *seriatim.*

---

**10.** In Civil Action No. 99–CV–2926, SmithKline's proposed Amended Complaint also alleges contributory infringement under Section 271(c). Pursuant to that section,

Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).

It would appear that under this provision, any liability on the part of Sumika must necessarily be predicated upon its supply of the paroxetine hydrochloride used in the development and submission of Geneva's ANDA. However, under Section 271(e)(1), it is not an act of infringement to manufacture, use, offer to sell, sell or import a patented invention "solely for uses reasonably related to the development and submission of [an ANDA]." 35 U.S.C. § 271(e)(1). Rather, the infringement occurs when the activities go beyond mere preparation and the ANDA is submitted for the purpose of engaging in the commercial manufacture, use or sale of a patented product before the expiration of the patent. *See* 35 U.S.C. § 271(e)(2); *Upjohn Co. v. Mova Pharm. Corp.*, 899 F.Supp. 46, 49 (D.P.R. 1995). Moreover, Section 271(e)(3) provides that:

In any action for patent infringement brought under this section, no injunctive or other relief may be granted which would prohibit the making, using, offering to sell, or selling within the United States or importing into the United States of a patented invention under paragraph (1).

35 U.S.C. § 271(e)(3).

Based on the plain language of these provisions, it appears that Sumika's activity of supplying a non-staple component of a patented invention, which would otherwise constitute contributory infringement under Section 271(c), is specifically protected by Section 271(e)(1)'s exemption and Section 271(e)(3)'s limitation on relief, because the component was supplied for the development of Geneva's ANDA. In this regard, we note that SmithKline does not allege contributory infringement in the Amended Complaints subsequently submitted with its Motions to Amend in Civil Action Nos. 00–CV–1393, 00–CV–5953 and 00–CV–6464. Moreover, the parties' briefs focus on the issue of inducement of infringement and do not provide more than a

### 1. *Direct Infringement*

■ Geneva and Zenith argue that the proposed claim against Sumika under Section 271(e)(2) is futile because such a claim can only be stated against the party that submits the ANDA. We agree. Under Section 271(e)(2), the act of infringement is the submission of the ANDA for the purpose of obtaining FDA approval to commercially make, use or sell a drug claimed in a patent or the use of which is claimed in a patent before the patent's expiration. By its terms, the Act limits liability for direct infringement to the party submitting the ANDA.

This precise issue was considered by a court in the Northern District of Illinois in another case brought by SmithKline against a generic drug manufacturer that submitted an ANDA for its generic paroxetine hydrochloride product. *Smithkline Beecham Corp. v. Pentech Pharm., Inc.*, No. 00 C 2855, 2001 WL 184804 (N.D.Ill. Feb.20, 2001). In the *Pentech* case, Smith-Kline sought leave to amend its complaint to add Asahi Glass ("Asahi"), the pharmaceutical chemical company that supplied the active ingredient and provided other assistance for the submission of Pentech's ANDA.[11]

The Court rejected SmithKline's contention that Asahi could be directly liable for infringement under Section 271(e)(2). The court explained:

Asahi cannot be held liable as a direct infringer under section 271(e)(2)(a) because Asahi did not submit the ANDA at issue. Rather, Asahi is the bulk manufacturer of the paroxetine hydrochloride active ingredient in Pentech's drug product and submitted a DMF to the FDA describing the manufacture of paroxetine hydrochloride used in Pentech's generic version of Paxil®. Smithkline's interpretation of section 271(e)(2)(a) as allowing a person other than the ANDA filer to be held liable for direct infringement under that section is not supported by the plain language of the statute. The plain language of the statute controls. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1579 (Fed.Cir.1990). There is no reference in section 271(e)(2)(A) to suppliers of ingredients of generic drug products or preparers of DMFs relied on by ANDA the FDA in support of Pentech's ANDA, specifically, Asahi's Drug Master File ("DMF") No. 14432 for paroxetine hydrochloride. [Footnote omitted]. Smithkline further alleges that Pentech relied before the FDA upon Asahi's DMF for a complete description of the paroxetine hydrochloride, including the manufacturing facilities and process, physical and chemical characteristics, and stability of the paroxetine hydrochloride made for Pentech. Smithkline believes that the Asahi DMF describes the production of crystalline paroxetine hydrochloride which infringes Smithkline's '723, '132, and/or '423 patents. If the FDA approves Pentech's ANDA, Asahi will be Pentech's solely approved manufacturer of the paroxetine hydrochloride to be used as the active ingredient in Pentech's generic drug product.

*Pentech*, 2001 WL 184804 at *1 (citations to complaint omitted).

---

cursory analysis of contributory infringement in the context of Section 271(e). For the foregoing reasons, and because SmithKline appears to have abandoned contributory infringement as a theory of liability, we will assume that such a claim cannot be stated against Sumika.

11. The grounds for SmithKline's claims against Asahi, which are virtually identical to the instant allegations regarding Sumika, were summarized by the *Pentech* court as follows:

Smithkline alleges that Asahi collaborated with Pentech in the research and development of Pentech's generic version of Paxil®, provided Pentech with paroxetine hydrochloride for use in clinical studies in support of Pentech's ANDA, and directed and encouraged Pentech and the FDA to rely on information that Asahi submitted to

filers. Section 271(e)(2)(A) unambiguously *refers only to persons who submit ANDAs.*

*Pentech,* 2001 WL 184804 at *2. We find this reasoning persuasive. Moreover, as the court in *Pentech* noted, SmithKline has not offered any authority to support the proposition that a third party can be liable as a direct infringer under Section 271(e)(2) based its "participation" in another party's filing of an ANDA.

### 2. *Inducement of Infringement*

■ While we are satisfied that Sumika cannot be liable as a direct infringer, we conclude that SmithKline can state a claim against Sumika for inducement of infringement. *See Pentech,* 2001 WL 184804 at *3 (denying motion to dismiss claim for inducement of infringement against Asahi); *Smithkline Beecham Corp. v. Pentech Pharm., Inc.,* No. 00 C 2855, 2002 WL 535082, *3–4 (N.D.Ill. April 10, 2002) ("*Pentech II*") (denying motion for summary judgment based on material dispute of fact regarding whether Asahi induced infringement of patents). Initially, we note that SmithKline's inducement claim against Sumika is not based merely on its provision of the paroxetine hydrochloride used in connection with the preparation of Geneva's and Zenith's ANDA's. SmithKline alleges that Sumika submitted its DMF for paroxetine hydrochloride in support of the ANDAs. According to SmithKline, Sumika authorized Geneva and Zenith to rely on the DMF in their submissions, which expressly incorporate and rely upon the DMF for a complete description of the paroxetine hydrochloride that is the sole active ingredient in their proposed products. The ANDAs further include Sumika's certificates of analysis and testing for the paroxetine hydrochloride. If Geneva's and Zenith's ANDAs are approved, Sumika will allegedly manufacture and sell the generic drug products that are the subject of the ANDAs. In short, SmithKline's theory is that Sumika collaborated as a partner with Geneva and Zenith, and actively and knowingly induced the act of infringement committed with the submission of their ANDAs.

■ As set forth above, Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). The Federal Circuit Court of Appeals has explained that "actively inducing" under § 271(b) requires an affirmative act of some kind.

> Of course inducement has connotations of *active steps knowingly taken*—knowingly at least in the sense of purposeful, intentional as distinguished from accidental or inadvertent. But with that qualifying approach, the term is as broad as the range of actions by which one in fact causes, or urges, or encourages, or aids another to infringe a patent.

*Tegal Corp. v. Tokyo Electron Co., Ltd.,* 248 F.3d 1376, 1378–79 (Fed.Cir.2001) (quoting *Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 411, 137 USPQ 84, 87 (5th Cir. 1963)). *See also Pentech* II, 2002 WL 535082 at *3 ("Liability under § 271(b) attaches if a party 'actively and knowingly aid[s] and abet[s] another's direct infringement.' ") (quoting *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668, (Fed.Cir.1988)). To be liable for inducing infringement, there must be an act of direct infringement by the party being induced, *see Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.,* 246 F.3d 1336, 1351 (Fed.Cir.2001), and the inducing party must (1) knowingly act and (2) specifically intend to aid in the infringement. *Pentech II,* 2002 WL 535082 at *3 (citing *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed.Cir. 1990)).

Geneva and Zenith contend that inducement of infringement under § 271(b) requires direct infringement as defined in § 271(a). According to Defendants, the filing of an ANDA with a Paragraph IV certification is not an act of direct infringement. Rather, Defendants argue, the act of infringement defined in Section 271(e)(2) merely "employs a 'legal fiction of a defined act of infringement' to create jurisdiction." [12] *See* Zenith Mem. in Opposition to Plaintiffs' Motion in Civil Action Nos. 00–CV–1393 and 00–CV–6464 (quoting *Zeneca Ltd. v. Mylan Pharm., Inc.*, 173 F.3d 829, 836 (Fed.Cir.1999)) (Rader, concurring) (discussing nature of § 271(e)(2) infringement in the context of personal jurisdiction analysis).

Contrary to Defendants' arguments, we are not convinced that "direct infringement" is limited to the acts proscribed in § 271(a). Defendants cite *Hoechst–Roussel Pharm., Inc. v. Lehman*, 109 F.3d 756, 759 (Fed.Cir.1997), for the proposition that direct infringement is limited to "making, using, offering to sell, or selling the invention defined by the claims of a patent, without the authority of the patent owner." However, the quoted passage from *Hoechst–Roussel* simply recites a general definition offered in the context of an analysis of patent term extensions. The opinion contains no discussion of infringement under § 271(e)(2) or any particular provision of § 271.

Moreover, we have found nothing in the statutory language or legislative history that limits the application of § 271(b) to claims of infringement under § 271(a) or

that treats the "act of infringement" defined in § 271(e)(2) as anything other than "direct infringement." Rather, the legislative history states that "[t]he purpose of Sections 271(e)(1) and (2) is to establish that experimentation with a patented drug product, when the purpose is to prepare for commercial activity *which will begin after a valid patent expires*, is not a patent infringement." H.R. Rep. 98–857(I), 1984 U.S.C.C.A.N. 2647, 2678 (emphasis added). By limitation, the foregoing suggests that experimentation with a patented drug for the purpose of beginning commercial activity *before the patent expires* is an act of direct patent infringement.

In our view, the legislative history indicates that while Congress intended to protect the pre-submission activity exempted under § 271(e)(1), the act of submitting an ANDA with a Paragraph IV certification or the active inducement of such a submission is a remediable act of infringement. The House Report explains:

The Committee expects that infringement actions pursuant to this section will only be brought in the instance described in Section 271(e)(2), where a party submitting an Abbreviated New Drug Application under Title I of this Bill certifies that a patent is invalid or non-infringed and gives the required notice of that certification to the patent owner. In the event the patent is found to be valid and infringed, *so that the act of infringement described in Section*

---

12. Geneva makes the similar argument that because "[t]here is no reference in § 271(e) to inducing infringement ... it would be improper to expand the carefully calibrated 'highly artificial' act of infringement of § 271(e)(2) to include these additional causes of action." *See* Geneva's Mem. in Opposition to Plaintiffs' Motion in Civil Action Nos. 99–CV–2926 and 00–CV–5953 at 9 and 10, respectively. This assertion ignores the fact there is also no mention of inducing infringement in § 271(a), the provision Geneva relies on for its definition of "direct infringement." Likewise, the terms of the inducement provision, § 271(b), do not limit its application to particular acts of infringement defined under the Act.

*271(e)(2) has occurred,* the remedies available to the court are three-fold.

If the infringing party has not begun commercial marketing of the drug, injunctive relief may be granted to prevent *any commercial activity* with the drug and the FDA would be mandated to make the effective date of any approved ANDA not earlier than the expiration date of the infringed patent. H.R. Rep. 98–857(I), 1984 U.S.C.C.A.N. 2647, 2679 (emphasis added).

Accordingly, in the case of an act of infringement under § 271(e)(2), "injunctive relief may be granted against an infringer to prevent the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug. . . ." 35 U.S.C. § 271(e)(4)(B). The language of this provision does not limit the availability of injunctive relief to the "direct infringer" or to the ANDA filer. Where neither the terms of the Act nor its legislative history contain any express language precluding inducement liability under § 271(b) for the act of infringement defined in § 271(e)(2), we will not write such a provision into the law. In short, we conclude that relief may be available against Sumika for its alleged inducement of infringement and, therefore, the proposed Amended Complaints are not futile.

## IV. Conclusion

For the foregoing reasons, we will grant SmithKline's Motions for Leave to Amend its Complaints and permit the addition of claims for inducement of infringement against Sumika in Civil Action Nos. 99–CV–2926, 00–CV–1393, 00–CV–5953 and 00–CV–6464.

An appropriate order follows.

### ORDER

AND NOW, this 30th day of September, 2002, upon consideration of the Motions of Plaintiffs SmithKline Beecham Corp., Beecham Group, P.L.C. and SmithKline Beecham, P.L.C. (collectively, "SmithKline") for Leave to Amend the Complaint and Join a Party Defendant in Civil Action Nos. 99–CV–2926 (Doc. No. 26), 00–CV–1393 (Doc. No. 34), 00–CV–5953 (Doc. No. 11) and 00–CV–6464 (Doc. No. 34 in 00–CV–1393), and all papers filed in support thereof or in opposition thereto, it is ORDERED that the above Motions are GRANTED. Within ten (10) days hereof, Plaintiff may join Sumika Fine Chemicals Co., Inc. ("Sumika") as a Defendant and may allege claims for inducement of infringement pursuant to 35 U.S.C. § 271(b) against Sumika in the above-captioned cases.